IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RALPH E. DEAN,                              )
                                            )
                    Plaintiff,              )
                                            )
          v.                                )          1:15CV1095
                                            )
NANCY A. BERRYHILL,[1]                      )
Acting Commissioner of Social Security,     )
                                            )
                                            )
                    Defendant.              )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Ralph E. Dean ("Plaintiff") brought this action pursuant to Section 205(g) of

the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g)), to obtain judicial review

of a final decision of the Commissioner of Social Security denying his claims for Disability

Insurance Benefits ("DIB") under Title II of the Act.  The parties have filed cross-motions

for judgment, and the administrative record has been certified to the Court for review.

I.        PROCEDURAL HISTORY

Plaintiff protectively filed his application for DIB in July of 2013, alleging a disability

onset date of May 30, 2010 (Tr. at 73.)[2]  His claim was denied initially on September 5, 2013

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017.  Pursuant to
Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W.
Colvin as the Defendant in this suit.  No further action need be taken to continue this suit by reason of the last
sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the sealed administrative record [Doc. #7].

(Tr. at 73-87) and on reconsideration on December 17, 2013 (Tr. at 89-104). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (Tr. at 120-21), which he attended on September 25, 2015 (Tr. at 52-71). The ALJ ultimately issued a decision finding that Plaintiff was not disabled under the meaning of the Act. (Tr. at 12-21.) Plaintiff's subsequent request for an Appeals Council review was denied on December 10, 2015 (Tr. at 1-6), thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review.

## II.    LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

Case 1:15-cv-01095-WO-JEP   Document 13   Filed 02/21/17   Page 2 of 17

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

_____

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.    DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. (Tr. at 14.) Plaintiff therefore met his burden at step one of the sequential analysis. At step two, the ALJ further determined that Plaintiff suffered the severe impairments of "lumbar degenerative disc disease; and hypertension." (Id.) The ALJ found at step three that these impairments did not met or equal a disability listing. (Tr. at 15.) Therefore, the ALJ was required to determine Plaintiff's RFC. The ALJ determined that Plaintiff retained the RFC to perform:

> Medium work as defined in 20 CFR 404.1567(c) except that he may occasionally climb ramps, stairs, ladders, and scaffolds; [Plaintiff] may frequently balance,

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

stoop, kneel, crouch and crawl; and he must avoid concentrated exposure to workplace hazards.

(Tr. at 15.) Based on that determination, the ALJ found under step four of the analysis that Plaintiff was able to return to his past relevant work as a line supervisor, therefore meaning that Plaintiff was not disabled within the meaning of the Act. (Tr. at 19.) The ALJ alternatively concluded that based on Plaintiff's age, education, work experience, and RFC, Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. at 21.) In making that determination, the ALJ noted several positions that Plaintiff would be able to perform, based on the testimony of a Vocational Expert. (Tr. at 20.) The ALJ thus determined that Plaintiff was not disabled under the meaning of the Act. (Id.)

Plaintiff now argues that the ALJ erred in three respects: (1) finding that Plaintiff's impairments did not meet or medically equal Listing 1.04A or 1.04C; (2) failing to give proper weight to the opinion evidence on record; and (3) finding that Plaintiff has the RFC to perform medium work and his past relevant work as a line supervisor. The Court will examine each of these arguments in turn. Ultimately, none merit remand.

A. Substantial Evidence Supports the ALJ's Determination that Plaintiff's Impairments Did Not Meet or Equal Listing 1.04A or 1.04C.

Plaintiff first argues that the ALJ erred at step three of the sequential evaluation process by finding that Plaintiff's back impairment did not meet or equal 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A or § 1.04C (hereinafter, "Listing 1.04A" or "Listing 1.04C," respectively).[5] At step three of the sequential analysis, the ALJ considers whether any

---

[5] In his brief, Plaintiff argues that the ALJ erred by finding that Plaintiff did not meet or equal "Listing 1.04," and subsequently refers to requirements of 1.04A and 1.04C. Plaintiff does not make any argument that he

impairment meets or equals one or more of the impairments listed in Appendix 1 of the regulations. The listings define impairments which are so severe that they would "prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" Sullivan v. Zebley, 493 U.S. 521, 532 (1990). For a claimant to demonstrate that he qualifies for a listing, and therefore is entitled to a conclusive presumption of disabled status, he must meet all of the medical criteria specified for that listing. Id. at 531. An impairment that meets only some of the listing criteria, no matter how severe, will not qualify. Id. Similarly, "[f]or a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Id. (emphasis in original).

Notably, at step three, an ALJ is not required to explicitly identify and discuss every possible listing; however, he is compelled to provide a coherent basis for his step three determination, particularly where the "medical record includes a fair amount of evidence" that a claimant's impairment meets a disability listing. Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Where such evidence exists but is rejected without discussion, "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." Id. (citing Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986)). Thus, the ALJ's decision must include "a sufficient discussion of the evidence and explanation of its reasoning such that meaningful judicial review is possible." Meador v. Colvin, No. 7:13-

---

qualifies for Listing 1.04B, which requires evidence of spinal arachnoiditis confirmed by an operative note, pathology report, or medically acceptable imaging.

CV-214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) (citing Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011)). However, it is possible that even "[a] cursory explanation" at step three may prove "satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." Id.

With respect to Listings 1.04A and 1.04C, a claimant must show that he suffers from a spinal disorder, such as a "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [and/or] vertebral fracture." 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 1.04. The claimant must also show that his spinal condition "result[s] in compromise of a nerve root (including the cauda equina) or the spinal cord." Id. Finally, if a claimant meets these requirements, he must then show that he meets one of the additional sets of criteria set out in Part A or Part C of the listing. With respect to Listing 1.04A, he must demonstrate:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

Id. § 1.04A. With respect to Listing 1.04C, he must demonstrate:

> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Id. § 1.04C.

In the present case, Plaintiff's documented lumbar degenerative disc disease satisfied the first required showing for Listings 1.04A and 1.04C. Although the ALJ classified Plaintiff's

8

lumbar degenerative disc disease as a severe impairment at step two (Tr. at 14), at step three the ALJ noted that Plaintiff had not demonstrated the second and third requirements of Listings 1.04A and 1.04C (Tr. at 15). Specifically, the ALJ found that:

> The claimant's lumbar degenerative disc disease does not meet Listing 1.04 because the record does not demonstrate compromise of a nerve root (including the cauda aquina) or the spinal cord with additional findings of : A) evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising; or B) spinal arachnoiditis; or C) lumbar spinal stenosis resulting in pseudoclaudication.

(Tr. at 15.) Subsequently, the ALJ further discussed the medical evidence relevant to Plaintiff's back impairment at great length when assessing Plaintiff's RFC. (Tr. at 16-19.) In the course of this discussion, the ALJ noted that Plaintiff began experiencing symptoms related to his back impairment following a February 5, 2010 car accident (Tr. at 16); that an x-ray of Plaintiff's back performed at that time showed only mild spondylosis and scoliosis (Tr. at 17); that at appointments in late 2010 and early 2011, Plaintiff noted significant improvement in his back symptoms, and did not seek treatment for his back impairment again until two years later in 2013 (id.); that another x-ray performed on August 22, 2013, showed only minimal degeneration and mild scoliosis (id.); and that at an August 1, 2014 examination, Plaintiff's musculoskeletal system showed no significant weakness or deformity, and his reflexes and coordination were unremarkable (id.).

On appeal, Plaintiff now argues that the ALJ erred in finding that Plaintiff did not meet Listing 1.04A or 1.04C. However, Plaintiff never identifies evidence that he meets the latter two requirements of Listings 1.04A and 1.04C. For example, with respect to the second requirement of Listings 1.04A and 1.04C, Plaintiff points to no evidence indicating

9

compromise of a nerve root or the spinal cord. With respect to the third requirement of Listing 1.04A, Plaintiff points to no evidence of nerve root compression, nor does he point to any evidence of motor loss accompanied by sensory or reflex loss. In order to meet the requirements of Listing 1.04A, Plaintiff is required to make an affirmative showing on all of the included criteria. With respect to the third required showing for Listing 1.04C, Plaintiff points to no evidence of lumbar spinal stenosis established by medical imaging, nor does he point to evidence of an inability to ambulate effectively under the applicable regulatory standards.[6]

In sum, Plaintiff has failed to present sufficient evidence to establish that his back impairment meets or equals Listing 1.04A or 1.04C. Moreover, the ALJ considered Listing 1.04, concluded that Plaintiff's impairments did not meet or equal the requirements of the Listing, and then in the subsequent RFC analysis, pointed to numerous details in the record that would support that conclusion. In other words, "[t]he record as a whole supports the ALJ's listing determination." See Matney v. Colvin, No. 1:09-CV-229, 2013 WL 1788590, at *4 (M.D.N.C. Apr. 26, 2013). Thus, the ALJ's determination that Plaintiff does not qualify for Listing 1.04A or 1.04C was supported by substantial evidence, and this Court finds no reversible error.

B.      The ALJ Did Not Err by Giving Little Weight to Dr. Ezeigbo's and Dr. Morris' Opinions.

---

[6] "Inability to ambulate effectively means an *extreme limitation of the ability to walk*; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b (emphasis added).

Plaintiff next argues that the ALJ failed to give appropriate weight to treating source opinions of Dr. Walter Ezeigbo ("Dr. Ezeigbo") and the consultative physician opinion of Dr. Peter Morris ("Dr. Morris"). In a related argument, Plaintiff contends that the ALJ had a duty to contact Dr. Ezeigbo for clarification of any inconsistencies or ambiguities in his opinion evidence.

When determining a claimant's RFC, the ALJ must analyze all of the medical and other evidence in the claimant's case record. 20 C.F.R. § 416.920(e); see also id. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). If the medical opinions are inconsistent with each other, or with other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. See 20 C.F.R. § 416.927(c)(2), (d).

1.    Dr. Ezeigbo

Plaintiff first argues that the ALJ failed to analyze Dr. Ezeigbo's opinion in accordance with Social Security Ruling ("SSR") 96-2p and 20 C.F.R. § 404.1527, better known as the "treating physician rule." The treating physician rule generally requires an ALJ to give controlling weight to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the case record," it is not entitled to controlling

weight.    See Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *2; 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2);  see also Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 416.927(c)(2)(i)-(c)(6) and § 404.1527(c)(2)(i)-(c)(6),  including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion.

Where an ALJ does not give controlling weight to a treating source opinion, she must "give good reasons in [her] . . . decision for the weight" assigned, taking the above factors into account.  20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).  "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts."  Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted); see also SSR 96-2p (noting that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").

Finally, even if an opinion by a treating physician is given controlling weight with respect to the nature and severity of a claimant's impairment, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act are never accorded controlling weight because the decision on that issue is reserved for the Commissioner alone.  20 C.F.R. §§ 404.1527(d) and 416.927(d).

In the present case, Dr. Ezeigbo was Plaintiff's treating physician at Advance Family & Sports Medicine Center. Dr. Ezeigbo wrote a letter on December 9, 2014, stating that Plaintiff:

> has history of severe osteoarthritis of neck and back, which has significantly impaired his ability to work without pain. He would be a perfect candidate for Functional Capacity Evaluation but due to financial reasons, this was not done. Please accord him help with his disability evaluation.

(Tr. at 322.) Three months later, on March 5, 2015, Dr. Ezeigbo wrote a letter asking that Plaintiff be excused from jury duty, stating that:

> [d]ue to his multiple medical conditions, [Plaintiff] would not make a good candidate for this service. He suffers from Lumbosacral Radiculitis. This means, that he is unable to sit for long periods of time. Doing so causes immense pain. Please excuse [Plaintiff] from having to attend his scheduled jury duty date.

(Tr. at 323.)

The ALJ gave "little weight" to each opinion, citing multiple deficiencies (Tr. at 18.) With respect to the opinion letter dated December 9, 2014, the ALJ opined that it was "vague and, at best, merely implies disability. [Dr. Ezeigbo] did not adequately explain the specific nature or extent of Plaintiff's physical limitations." (Tr. at 18.) In addition, the ALJ found that actual disability was not shown in the objective medical evidence in the record. (Id.) Specifically, the ALJ noted that:

> Musculoskeletal findings on February 17, 2011, showed no significant weakness or deformity. The claimant responded well to conservative treatment. In addition, the nearly two-year gap in treatment with Dr. Ezeigbo suggests a lack of acute back symptoms. Chiropractor Tom Nixon stated on March 28, 2013, that he expected a full recovery of his functional deficits. Furthermore, physical exam findings on August 1, 2014, were unremarkable. Musculoskeletal function showed no significant weakness or deformity. Motor strength was normal, coordination was regular, and the claimant's deep tendon reflexes were intact.

13

(Tr. at 18) (references to exhibits omitted). Similarly, with respect to the March 5, 2015 letter, the ALJ noted that it was "vague." Specifically, the ALJ noted that Dr. Ezeigbo did not specify the length of time the claimant could sit. (Tr. at 18.) In addition, the ALJ gave the opinion little weight because the objective evidence does not show etiology for the reportedly severe lumbar radiculopathy. An x-ray of the claimant's low back, taken on August 22, 2013, showed minimal degenerative changes and no acute findings. Additionally, Dr. Morris reported that the claimant sat comfortably during his exam. He could ambulate without assistance, lower extremity strength was normal, and his reflexes were intact. (Tr. at 18.)

Thus, in assigning Dr. Ezeigbo's opinion's little weight, the ALJ noted that each opinion letter offered little or no detail as to the nature and extent that Plaintiff's impairments would limit his physical abilities. The ALJ also explained at great length how a broad interpretation of each opinion letter would be inconsistent with the objective medical evidence in the record. In sum, the ALJ comprehensively assessed Dr. Ezeigbo's opinions, and his decision to give little weight to the December 9, 2014 and March 5, 2015 opinion letters was supported by substantial evidence.

Plaintiff also argues that the ALJ had an obligation to recontact Dr. Ezeigbo to resolve any ambiguities raised by his December 9, 2014 and March 5, 2015 opinion letters, citing 20 C.F.R. § 404.1512(e). However, this regulation, which imposed a "duty to recontact" on ALJs when the evidence from a treating physician was inadequate to make a disability determination, has not been in effect since 2012. The applicable regulations now allow ALJs substantial discretion in deciding whether to recontact a treating physician for additional or clarifying information. See 20 C.F.R. § 404.1520b(c)(1)-(2). Here, the ALJ determined that the record

evidence, as a whole, was sufficient to conclusively determine that Plaintiff was not disabled. In the circumstances, the undersigned finds no reversible error in the ALJ's decision not to recontact Dr. Ezeigbo for additional information.

        2.      Dr. Morris

Plaintiff also contends that the ALJ erred in giving little weight to the opinion of consultative examiner Dr. Morris.[7]  In his August 22, 2013 evaluation, Dr. Morris opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, that Plaintiff could stand six hours and walk four hours in an eight-hour day, and that Plaintiff would be able to perform postural maneuvers occasionally (Tr. at 18, 264-70.)

The ALJ gave little weight to Dr. Morris' opinion because "it is not consistent with the objective evidence" in the record.  (Tr. at 18.)  In support of that conclusion, the ALJ recounted the objective medical evidence contradicting Dr. Morris' opinion.  Specifically, the ALJ noted that:

> [a] lumbar x-ray performed the same day showed minimal degeneration, mild scoliosis, and no acute findings.  Prior diagnostic images on February 5, 2010, showed mild spondylosis.  Moreover recent exam findings do not show nerve root involvement; straight leg and cross straight leg raises on June 9, 2014, were normal.  Musculoskeletal findings on August 1, 2014, were also unremarkable. The claimant showed no significant weakness or deformity.  His motor strength was normal, coordination was normal, and tendon reflexes were unremarkable.

(Tr. at 18.) (references to exhibits omitted).[8]  Because Dr. Morris' opinion was not consistent with objective medical evidence in the record, and because the ALJ explained his

---

[7] The ALJ discussed Dr. Morris' opinion at length; however, a typographical error labels Dr. Morris as "Mark Fields, M.D." in the ALJ's opinion. (Tr. at 18.) The cross-references cited in the ALJ's opinion make clear that the ALJ intended to refer to Dr. Morris. The ALJ also discussed Dr. Morris' opinion, using the correct name, at an earlier part of the RFC analysis. (Tr. at 16.)

[8]  The medical records were not available for Dr. Morris' review. (Tr. at 264.)

determination in detail and explained the evidentiary basis for the determination, the ALJ's

decision to give little weight to Dr. Morris' opinion was supported by substantial evidence.

Thus, as to both Dr. Ezeigbo and Dr. Morris, the ALJ considered the opinions at length

and identified the reasons for giving those opinions little weight. Substantial evidence

supports that determination, and the Court finds no reversible error.

C.     The ALJ's RFC Finding was Supported by Substantial Evidence.

Finally, Plaintiff contends that the ALJ's RFC determination was not based on

substantial evidence. After hearing Plaintiff's contentions and reviewing the evidence in the

record, the ALJ concluded that Plaintiff was able to perform medium work, which is defined

as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects

weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). In reaching this conclusion, the ALJ

considered opinion evidence from several physicians, as well as objective evidence in the form

of x-rays and physical tests.

In arguing that the ALJ erred in forming Plaintiff's RFC, Plaintiff again relies on Dr.

Ezeigbo's letters and Dr. Morris' consultative examination. However, the ALJ gave little

weight to each of these opinions, as discussed above. In addition, to the extent that Plaintiff

relies on those letters or particular parts of the treatment record, this Court does not reweigh

the evidence to determine whether substantial evidence would support a finding of disability.

As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether

a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667

F.3d at 472 (internal brackets omitted); see also Edge v. Astrue, 627 F. Supp. 2d 609, 612

(E.D.N.C. 2008) ("[A]n [ALJ] has the sole authority to make credibility determinations and

resolve inconsistencies or conflicts in the evidence."). Here, much of the evidence in the record is conflicting as to what extent Plaintiff's ailments affect his ability to work. The ALJ considered all of the evidence and made findings and determinations as noted above. Based on those findings, the ALJ determined Plaintiff's RFC. That determination is supported by evidence that is "substantial" under the standards set out in <u>Hunter</u>, 993 F.2d at 34, and <u>Mastro</u>, 270 F.3d at 176. Accordingly, the Court finds no error in the ALJ's RFC determination.

IV.     CONCLUSION

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #9] should be DENIED, and Defendant's Motion for Judgment on the Pleadings [Doc. #11] should be GRANTED, and that this action be DISMISSED WITH PREJUDICE.

This, the 21st day of February, 2017.

                                                      /s/ Joi Elizabeth Peake
                                                  United States Magistrate Judge